# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,  
        v.  

JERRY REED,  
SBI: 00480004  
DOB: 12/06/1991

: ID No. 1809015387

Submitted: May 27, 2020  
Decided: June 4, 2020

## MEMORANDUM OPINION AND ORDER

*UPON DEFENDANT'S*  
*MOTION TO WITHDRAW PLEAS: **DENIED***  
*MOTION FOR POSTCONVICTION RELIEF: **DENIED***  
*MOTION FOR MODIFICATION OF SENTENCE: **DENIED***

Jerry Reed, Defendant, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977

Caroline Brittingham, Esquire and Nichole Gannett, Esquire, Department of Justice, 114 East Market Street, Georgetown, Delaware 19947

**KARSNITZ, J.**

On September 26, 2018, Delaware State Police responded to a report of a bullet-riddled body found in the weeds along the edge of Portsville Pond outside Laurel, Delaware. Police identified the body of Isaac Hatton ("Hatton"). The homicide investigations identified Traevon Dixon ("Dixon") and Jerry Reed ("Reed") as the likely perpetrators of the crime. We may never know the real motivation of the killers - drugs, money or something else. The investigation focused upon an incident which occurred around 8:30 p.m. at the Little Creek Deli in Laurel. Police investigators interviewed witnesses and located video surveillance. The video showed parts of what police described as a verbal altercation between the victim and co-defendants Dixon and Reed.

After the incident in Laurel, several vehicles including one in which the victim traveled left Laurel. Investigators, through various witness interviews, determined that the victim and co-defendants traveled to Portsville Pond where Hatton was shot and killed. Co-defendants Dixon and Reed were charged with first degree murder[1] and possession of a firearm during the commission of a felony.[2]

---

[1] 11 *Del. C.* §636.

[2] 11 *Del.* C. §1447.

Dixon was first scheduled for trial. He pled guilty to second degree murder[3] and the weapons charge in late 2019. I sentenced Dixon to a total of 35 years at Level 5 incarceration suspended after serving 20 years, and additional periods of probation.

Reed was scheduled for trial in January, 2020. Shortly before the trial, counsel for the parties notified me that an agreement had been reached as to pleas to be entered by Reed. On January 13, 2020 Reed pled guilty to manslaughter[4] and no contest to the weapons charge. Notably Reed's plea involved a lesser offense than that to which his co-defendant Dixon had pled guilty. I conducted the formal and typical plea colloquy with Reed required of me by law, including Superior Court Criminal Rules.[5] Reed was given appropriate advice at the plea hearing, including the crimes to which he was entering a plea, the effect of the pleas including the effect of the no-contest plea, and the potential penalties. Reed signed the plea agreement as well as the Truth-in-Sentencing Guilty Plea form which outlined what was happening. I also reviewed with Reed the important rights he surrendered by pleading as he did. Finally, Reed admitted

[3] 11 *Del. C.* §635.

[4] 11 *Del. C.* §632.

[5] See Superior Court Criminal Rule 11.

3

to me he was guilty of manslaughter, and that the no-contest plea to the weapons charge was as effective as a plea of guilty. In short, I was fully satisfied Reed entered his pleas knowingly, voluntarily and intelligently.

Almost immediately Reed had second thoughts. Eight days after entering his plea, Reed wrote to me asking to withdraw them. I am not permitted to consider motions from represented defendants.[6] I sent a copy of Reed's letter in which he sought to withdraw his pleas to counsel. On several occasions I was advised by defense counsel that Reed did not want to withdraw his plea and wanted to proceed to sentencing. One of the occasions where withdrawal of the pleas was discussed was at Reed's sentencing, and, of course, in his presence.

I sentenced Reed on February 28, 2020. Despite having pled guilty to a lesser charge than his co-defendant, I sentenced him to a term almost identical to that imposed upon his co-defendant. I will give my reasoning for the sentencing in this opinion.

Reed has filed on his own three motions. On March 2, 2020, Reed filed a motion to withdraw his pleas. On March 31, 2020, Reed filed a motion for postconviction relief.[7] On April 13, 2020, Reed filed a motion seeking

---

[6]Superior Court Criminal Rule 47, and *Jones v. State*, 2020 WL 2280509 (Del. May 7, 2020).

[7]Superior Court Criminal Rule 61.

4

modification of his sentence.[8] I address all of Reed's motions in this opinion. I find there are no grounds to support Reed's motions and deny each of them.

Defendant Reed has several consistent themes throughout his motions. He argues the following:

(1)     he is innocent.

(2)     his attorneys told him he would not get fair consideration at trial because he is black.

(3)     the State decided not to prosecute many of the witnesses who had committed crimes which denied him equal protection of law.

(4)     the State lied when it said forensic evidence was not available for his preliminary hearing, and the report exonerated him.

In his last two filings Reed added the following:

(1)     the arguments of the prosecutor at his sentencing were improper,

(2)     the sentence was excessive,

(3)     I was biased against him.

In one form or another Reed has made all of these arguments in his motions.

---

[8]Superior Court Criminal Rule 35.

## THE MOTION TO SET ASIDE THE PLEAS

Superior Court Criminal Rule 32(d) provides:

> *Plea Withdrawal*. If a motion for withdrawal of a Plea of guilty or *Nolo Contendere* is made before imposition or suspension of sentence or disposition without entry of judgment of conviction, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. <u>At any later time, a plea may be set aside only by motion under Rule 61</u>. *(emphasis supplied)*.

I have two issues with this motion. First, it was filed by Reed at a time when he was represented by counsel,[9] and I am not permitted to consider it.[10] In addition, Rule 32(d) prohibits me from considering a withdrawal motion after sentencing except in the context of a Rule 61 motion. Defendant has filed a Rule 61 motion and I will consider the withdrawal argument in my consideration of it. For the reasons articulated above, I deny Reed's motion to withdraw his pleas.

## THE RULE 61 MOTION

Superior Court Criminal Rule 61 provides a comprehensive procedure for making and evaluating criminal defendants' claims for postconviction relief.

---

[9] See *Jones v. State, supra* in which our Supreme Court made clear that appointed counsel continues to represent his or her client through the appeal period.

[10] Superior Court Criminal Rule 47.

6

Rule 61 provides the exclusive remedy for postconviction review.[11] Depending upon the stage of the proceeding, Rule 61 mandates the process, and sets certain bars to seeking relief. Rule 61(i) limits, except in limited circumstances, the time for filing to one year from the judgment of conviction becoming final.[12] Multiple petitions are generally prohibited, with the only proviso in circumstances where new evidence creates a strong inference of innocence, or a new rule of constitutional law renders the conviction invalid.[13] Other bars to relief are part of Rule 61.[14]

Here none of the bars apply. This is defendant Reed's first motion, and it is timely filed.

A preliminary matter. Rule 61 provides for appointment of counsel in postconviction proceeding upon request by the defendant. Here Reed made no such request, and by Rule he has waived that right.[15] I am also permitted to expand the record in a postconviction proceeding.[16] I did so here by requiring trial

---

[11]Superior Court Criminal Rule 61(a)(2).

[12]Superior Court Criminal Rule 61(i)(1).

[13]See Superior Court Criminal Rule 61(i)(2), referencing paragraph (d)(2).

[14]See generally Superior Court Criminal Rule 61(i) subsection (i) through (4).

[15]Superior Court Criminal Rule 61(e).

[16]Superior Court Criminal Rule 61(g).

counsel to file an affidavit in response. In my view, and exercising my discretion, I am requiring no further expansion of the record. I see no need for a response to the motion from the State of Delaware.

**DEFENDANT REED'S ARGUMENTS**

     (1)    Ineffective Assistance of Counsel - failure to move to withdraw the pleas

Reed alleges his counsel was ineffective because they failed to file a motion to withdraw his pleas. As described above this issue was raised and ultimately withdrawn, by defendant prior to his sentencing. He has knowingly waived the claim. Even had Reed not waived the claim, there is no basis for it. Rule 61 evaluations are governed by the seminal United States Supreme Court case of *Strickland v. Washington.*[17] Delaware has adopted the *Strickland* standard and requires a showing that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[18]

The issues raised by Reed concerning withdrawal of his pleas are not

---

[17]466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.674 (1984).

[18]*Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

8

new. He raised, then withdrew, them prior to sentencing. The evidence against him, the conduct of the investigation, and the advice of his counsel all was evaluated by him with counsel before proceeding to sentencing. I reviewed it all with him during his plea colloquy. Reed presents only conclusory allegations now, likely based upon his dissatisfaction with results - his sentence. He does not point to any conduct of counsel which is inadequate.

In addition, I have followed this case from the beginning and been able to evaluate counsel's conduct. Without a trial it is always difficult for the trial judge to fully evaluate the evidence. But I have seen more than enough of the evidence to know it was far stronger against Reed then he now attempts to portray. I also was able to observe the efforts and arguments of defense counsel. In my view, counsel had a full grasp of the facts and made all appropriate arguments. I observed defense counsel push zealously for a speedy trial and assert some of the same arguments about the proof as advocated by Reed. In short, defense counsel fully complied with their responsibilities to the Court and the defendant. I have no doubt that defendant's pleas, which were favorable to him, were the result of counsel's hard work and efforts. Had defendant pressed his request to withdraw his pleas prior to sentencing, I would have almost certainly denied it.

There is no basis to find that Reed has met the first prong of the *Strickland* burden. I reject Reeds first argument.

(2)    Coerced Guilty Plea

Reed contends he was coerced to plead guilty because he was told he would lose at trial "...because he was going up against a system that (sic) already against blacks and minorities to lose."[19] Trial counsel denied this allegation, and responded that they described to defendant the strengths and weaknesses of the State's case and potential defenses. They also advised him that in their opinion it was in his best interest to accept the pleas.

The "coerced pleas" allegation contrasts directly with my determination that defendant knowingly, voluntarily and intelligently entered the plea. Defendant has provided me no reason to change my view.

The issue of race and how it may effect a jury trial is a difficult one, and always a subject of concern. I find it incredible that counsel would so starkly express the view described by defendant. Even if they did, it would not affect my view that defendant acted voluntarily in entering his pleas. The bold and conclusory allegation that the pleas were "coerced" does not change the answers to my questions at the plea colloquy in which defendant stated he was acting of his

---

[19]Defendants' motion, paragraph 2, DI 86.

10

own free will. I reject defendant's argument and reaffirm that the pleas were properly entered.

(3)    Equal Protection of the Law

Defendant claims his right to equal protection of the law was violated because police chose not to charge witnesses in his case with crimes in exchange for their testimony. Prosecutors have wide discretion as to whom they charge with crimes. Those charging decisions do not create an equal protection violation which somehow benefits this or any other defendant. Had defendant gone to trial, his counsel would have been able to cross-examine any of the witnesses presented against him. I told him that at his plea colloquy. Police agencies' treatment of the witnesses, whether or not they would be charged with crimes, would have been a fruitful ground of cross-examination. When Reed pled he gave up his right to trial and to cross-examine the witnesses.[20] I find no merit to Reed's "equal protection" argument.

(4)    Bias (sic) Judgment

Reed claims I was biased against him in sentencing. His argument is couched in conclusory terms and does not allege any particular reason he thinks I was biased. There are none of the typical claims of bias, such as knowing a party,

---

[20]*State v. Moreno*, 2001 Del. Super. Lexis 19 (Del. Super. Ct., Jan 30, 2001).

11

or witness, or having personal animosity or favoritism.

The only specific allegation that defendant makes is that I sentenced him and his co-defendant to the same terms, and since Traevon Dixon pled guilty to a more serious charge (Murder 2nd) than he did (Manslaughter), I must have been biased.

Reed correctly states the similarity between the sentences. My decision was not, however, a function of bias, but a function of my evaluation of the facts of the case and all of the arguments, evidence and investigation presented to me leading to the sentencing hearing.

I spent as much time considering the information I had prior to the sentencing hearing as I have on any case for which I have been responsible. My effort was appropriate as this is a case of the taking of a life either recklessly, or with the intent to cause serious physical injury. Murder or manslaughter are the most serious cases we resolve.

At first blush when I reviewed this case I had a response similar to defendant - if the State allowed Reed to plead guilty to a lesser crime, the State must have thought he had lesser culpability. After hearing the arguments and reviewing the presentence investigative report I reached different conclusions. The presentence report was comprehensive and thorough. The investigative

12

officer did the excellent job to which I have become accustomed, and provided me essential information greatly aiding in my decision making.

As I indicated orally at his sentence hearing I found a number of factors which led me to my conclusions.

First, I am convinced Reed was the instigator in the events which led to Isaac Hatton's death. I say this based upon comments Reed made in his presentence interview, comments from his co-defendant, and arguments from the State. I doubt we will ever know what motivated Reed or Dixon, and I strongly suspect we do not have the full story. What is clear to me is that Reed decided to encourage a fight between Dixon and Hatton, Reed knew that Dixon brought a gun to the fight, and Reed brought one himself. Dixon told me that he shot at Hatton because he was afraid of Reed, and thought if he did not, Reed would shoot him. Dixon said it was either him or Hatton, and I found what he said credible.

Second, Reed's record was extensive both in types of incident, and the time length of his criminal history. Some of the events described either did not lead to charges or charges were dismissed. Reed correctly comments that the State at the sentencing hearing discussed those uncharged or dismissed charges at length. While the law allows comment on them I do not put credence in uncharged or dismissed charges. What Reed's record of convictions did show to

13

me is an increasing level of violence which unfortunately and, in retrospect, inevitably led to the events which caused Hatton's death.

Third, and my final consideration is that Reed showed little remorse for his conduct. Hatton was a friend of Dixon. He was at least a long time acquaintance of Reed. They lived together for years in the small community of Laurel. While it is always difficult to know what is in a persons's heart, I watched Dixon sob uncontrollably at his sentencing. I believe I saw true remorse. At Reed's sentencing hearing I did not. To this day, Reed claims innocence in the face of strong evidence he was the motivating force in causing Hatton's death. Reed stated a few words of apology at his hearing; they appeared to me to be insincere.

In sum, for those three reasons, his instigation of the events, his significant prior record, and his lack of remorse, I sentenced Reed as I did. Reed pled guilty to a lesser offense. I considered that fact. Had he pled guilty to the same offense as Dixon I would have sentenced him more severely.

I do not like the process followed here by the State. Allowing a plea to a lesser offense then arguing for more incarceration time leaves a bitter taste in my mouth. It is my responsibility to evaluate the conduct and reach a decision I believe is just. I have done what in my view is just under the circumstances.

14

I had no bias against Reed. My decision was a result of my evaluation of the facts. Bias as a result of evaluation of facts is not bias at all. I find no merit in Reed's argument.

(5)     Bad Character

Reed's next argument relates to the prosecutor's "character argument" based upon uncharged conduct or dismissed charges. Such arguments have been allowed. Here I gave them no weight. As a result they played no part in my decisions. In addition no objection to the arguments was made at the hearing.

I find no merit in this argument.

(6)     Ineffective Assistance of Counsel -
        evidence showing innocence

Defendant claims his counsel failed to review with him evidence tending to show his innocence. Based upon the discussion at his plea hearing and the affidavit of counsel, I find this argument factually untrue. I reject it for the same reasons I rejected his first two arguments. In short our discussion at his plea hearing leads me to conclude counsel fully and adequately discussed all facts of the case with Reed, allowing him to make a knowing plea. Reed told me as much at his plea colloquy.

(7)     False Police Report

Reed complained in his initial letter seeking to withdraw his pleas, and in his postconviction petition, that the State made up a "false report" about what witnesses said. The short answer to this claim is it makes no difference at this stage. I seriously doubt a false report was made, but it makes no difference. Reed had all of the information prior to his plea. He could have used it to cross-examine the witnesses. He chose to enter pleas of guilty and no contest. He cannot use that prior information to change his position now.

## THE MOTION FOR SENTENCE MODIFICATION

Reed makes three arguments identical to those raised in his motion for postconviction relief. I reject them for the same reasons.

The one additional argument Reed raises here is that, prior to entering the pleas, Reed claims his attorney advised him he would get a sentence significantly less than that imposed. The paperwork filed in connection with a plea tells a defendant that a sentence is solely within the Court's discretion. Reed knew that. He was advised by counsel that his sentence was within the Court's discretion. Even assuming his counsel gave him a range of sentence, it matters not.

16

I was satisfied at sentencing that what I did was in accordance with the law, facts of the case, and most importantly, just. I remain satisfied, and deny the motion for reduction of sentence.

All murders have strong elements of tragedy. A life is lost, many lives are affected and many lives are ruined. The facts here led me to believe that Reed acted callously and with at a minimum reckless disregard for the life of Mr. Hatton. His acts led to Hatton's death. Reed then with no regard for decency left Hatton's body in the weeds of the pond. In my view the sentence I handed down was fully deserved.

I deny all three motions.

**IT IS SO ORDERED.**

_____
Craig A. Karsnitz

FILED PROTHONOTARY SUSSEX COUNTY 2020 JUN -4 P 12: 50

cc:    Prothonotary
        Julianne Murray, Esquire
        Ronald D. Phillips, Jr., Esquire